UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION


UNITED STATES OF AMERICA,          :       Docket No. 16-0045
                                   :
                   Plaintiff,      :
vs.                                :       March 7, 2016
                                   :
JASON COMEAUX,                     :
                                   :
                   Defendant.      :       Lafayette, Louisiana
_____


REPORTER'S OFFICIAL TRANSCRIPT OF THE PLEA HEARING
BEFORE THE HONORABLE DEE D. DRELL
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:              ALEXANDER C. VAN HOOK
                                United States Attorney's Office
                                300 Fannin Street, Suite 3201
                                Shreveport, LA  71101-3068


FOR THE DEFENDANT:              LAWRENCE C. BILLEAUD
                                Attorney at Law
                                706 W. University Avenue
                                Lafayette, LA  70506


LARAE E. BOURQUE, RMR, CRR
Federal Official Court Reporter
800 Lafayette Street, Ste. 3103
Lafayette, LA  70501

I N D E X

WITNESS:                                              PAGE:

SPECIAL AGENT SANDRA ZULLI
     Direct Examination by Mr. Van Hook...........  27

```
 1                    P R O C E E D I N G S
 2           MR. VAN HOOK:  Your Honor, good afternoon.
 3           Next would be the case of Jason Comeaux which is
 4   criminal number 6:16-0045.  My name is Alec Van Hook here on
 5   behalf of the United States Attorney's Office.  With me at
 6   counsel table is Tona Boyd with the Civil Rights Division and
 7   Special Agent Sandra Zulli.  We're all here on behalf of the
 8   United States.
 9           THE COURT:  All right.  For the defense, please.
10           MR. BILLEAUD:  Lawrence Billeaud along with defendant,
11   Jason Comeaux, Your Honor.
12           THE COURT:  All right.  And that's your client there at
13   the table with you?
14           MR. BILLEAUD:  It is, Your Honor.
15           THE COURT:  Okay.  Do you have filings for me in this
16   case, Mr. Van Hook?
17           MR. VAN HOOK:  Yes, Your Honor.
18           I have an original Rule 11 packet, which contains an
19   agreement and waiver of the statute of limitations, which was not
20   part of the last case, a waiver of indictment, a Bill of
21   Information, Elements of the Offense, an Affidavit of
22   Understanding of Maximum Penalty and Constitutional Rights, a
23   plea agreement, a stipulation in support of the guilty plea -- a
24   factual stipulation in support of the guilty plea, but,
25   Your Honor, the government also has Special Agent Zulli here who
```

 1   will testify.  We will offer those at this time.

 2              THE COURT:  Hand those to the clerk, please.

 3              And I will be addressing those with you in a few

 4   minutes, Mr. Billeaud, with your client.

 5              What about the matter of the Victim Notification Act,

 6   Mr. Van Hook?

 7              MR. VAN HOOK:  Your Honor, we have not notified all of

 8   the victims yet, but we will prior to sentencing.  We will

 9   coordinate with the victims and let them all know of their

10   rights.

11              THE COURT:  All right.  So no victim issue today?

12              MR. VAN HOOK:  Not today -- well, I stand corrected.

13   They have been notified of their victim rights.  They may have

14   something to say at sentencing.

15              THE COURT:  Okay.  But, anyway, nothing today is my

16   point.

17              MR. VAN HOOK:  No.

18              THE COURT:  And, likewise, there's been no written

19   request for restitution at this point?

20              MR. VAN HOOK:  Not at this point, Your Honor.

21              THE COURT:  All right.  You can come on up.

22              All right.  Mr. Comeaux, were you here for the last

23   proceeding?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  So you kind of heard what we're generally

```
 1    going to be doing here?

 2              THE DEFENDANT:  Yes, Your Honor.

 3              THE COURT:  I'll have to go through pretty much the

 4    same colloquy with you, but at least you have the advantage of

 5    having heard sort of the way it goes anyway.

 6              THE DEFENDANT:  Yes, Your Honor.

 7              THE COURT:  Now, although you have, I'm sure, conferred

 8    with Mr. Billeaud, it's my duty to inform you this afternoon as

 9    well.  I'm going to be asking you questions that are to be

10    answered after you've promised to tell me the truth, and if your

11    answers are indeed substantively inaccurate, you can still be

12    charged with perjury.  Again, that's not a threat, nor do I

13    expect that you will give falsehoods or any kind of information

14    that's not true, but it is required for me to tell you these

15    things so you'll be well-informed of the conditions under which

16    you answer questions.  Okay?

17              THE DEFENDANT:  Yes, Your Honor.

18              THE COURT:  All right.  So, Mr. Billeaud, how does he

19    intend to plead at this point?

20              MR. BILLEAUD:  He intends to enter a plea to three

21    counts, Your Honor; one count for deprivation under 18 -- civil

22    rights conspiracy under 18 U.S.C. § 241; deprivation of rights

23    under color of law, 18 U.S.C. § 242; and conspiracy to violate

24    18 U.S.C. 1512(b)(3) in violation of 18 U.S.C. § 371.

25              THE COURT:  All right.  Is that correct, Mr. Comeaux?
```

 1               THE DEFENDANT:  Yes, sir.

 2               THE COURT:  All right.  I need to, first of all, ask

 3      you -- I am not the judge presently assigned to this case.  Is

 4      there any objection with my taking the guilty plea this

 5      afternoon?

 6               THE DEFENDANT:  No, Your Honor.

 7               THE COURT:  And let me ask this one question to start

 8      off with, Mr. Billeaud.  We have a signed agreement and waiver of

 9      the statute of limitations.  Aside from what this simply says,

10      have you had a conversation with him?

11               MR. BILLEAUD:  I have, Your Honor.  I've explained to

12      him the basis and the need for it from the perspective of the

13      government and that my client is expected to testify truthfully

14      now and in the future, and that because of some prescriptive

15      deadlines, the government is requiring this as part of this

16      agreement.  We believe it is in my client's best interest and I'm

17      recommending that he enter this agreement.

18               THE COURT:  All right.  Mr. Comeaux, you understand

19      these things you think?

20               THE DEFENDANT:  Yes, sir, Your Honor.

21               THE COURT:  And you've discussed them in fact with

22      Mr. Billeaud?

23               THE DEFENDANT:  Yes, sir.

24               THE COURT:  And you're satisfied with that waiver?

25               THE DEFENDANT:  Yes, sir.

1          THE COURT:  All right.  Now, then, are those correctly
2    stated as the three charges to which you want to enter pleas of
3    guilty this afternoon?
4          THE DEFENDANT:  Yes, Your Honor.
5          THE COURT:  All right.  Under the same Fifth Circuit
6    rules, Rule 11 in particular, I have to address these three core
7    concerns before I can accept your guilty plea.  One of them is
8    whether your guilty plea is coerced in any way, the second is
9    whether you indeed fully understand the nature of all the charges
10   against you, and the third is whether you understand all the
11   consequences of a plea of guilty.
12          So these questions are designed to assure that yours is
13   a valid plea as a matter of law, and if at any time you don't
14   understand something and you want to talk to your attorney, it's
15   perfectly fine for you to turn aside and address anything you
16   want to to Mr. Billeaud.  Okay?
17         THE DEFENDANT:  Yes, sir.
18         THE COURT:  I need for you to raise your right hand,
19   please.
20         THE COURTROOM DEPUTY:  Do you solemnly swear that the
21   testimony you are will give in this case will be the truth, the
22   whole truth, and nothing but the truth, so help you God?
23         THE DEFENDANT:  Yes, ma'am.
24         THE COURTROOM DEPUTY:  Thank you.
25         THE COURT:  Do you understand, of course, having been

1   sworn, your answers to my questions will subject you to the

2   penalties of perjury or of making a false statement if you don't

3   answer truthfully?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  All right.  What is your age as of today,

6   Mr. Comeaux?

7           THE DEFENDANT:  Thirty-nine.

8           THE COURT:  And what is your date of birth?

9           THE DEFENDANT:  January 29th, 1977.

10          THE COURT:  And where are you from, sir?

11          THE DEFENDANT:  New Iberia, Louisiana.

12          THE COURT:  And how much education do you have?

13          THE DEFENDANT:  I graduated high school from New Iberia

14  Senior High in New Iberia.

15          THE COURT:  And how long ago was that?

16          THE DEFENDANT:  In 1996.

17          THE COURT:  All right.  You remember.  Most people

18  can't remember that date.  That's good.

19          With regard to your particular state of mind, are you

20  under a doctor's care for anything having to do with mental

21  issues?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Have you taken any drugs, medicine, or

24  pills, or, for that matter, any alcohol, anything that would

25  cause you to be less than clearheaded this afternoon?

1           THE DEFENDANT:  No, Your Honor.

2           THE COURT:  And do you have any mental or physical

3    problems that you think would impact your ability to understand

4    what's happening here?

5           THE DEFENDANT:  No, Your Honor.

6           THE COURT:  You believe that you are fully cognizant

7    and understanding of what's going on here this afternoon?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  And although I didn't ask you this, I

10   assume your educational level and the fact that you were employed

11   in law enforcement indicates you certainly can read and write the

12   English language.

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  All right.  You have the right, of course,

15   to have the assistance of counsel at all stages of the

16   proceedings against you.  Have you had an ample opportunity now

17   to discuss this case with Mr. Billeaud?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Are there any motions or other actions that

20   you think he should have filed on your behalf that he has not

21   filed?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Are you satisfied to have him assist you in

24   the case?

25          THE DEFENDANT:  Yes, Your Honor.

1     THE COURT:  Mr. Billeaud, any doubt as to his

2 competence to enter pleas of guilty to these three counts?

3     MR. BILLEAUD:  No doubt, Your Honor.

4     THE COURT:  Mr. Comeaux, under the Constitution and

5 laws of the United States, you have a right to plead not guilty

6 and to have all three of these charges tried by a jury of 12

7 people, all of whom would have to agree on a verdict.  Do you

8 understand that?

9     THE DEFENDANT:  Yes, Your Honor.

10     THE COURT:  Likewise, at the trial you would be

11 presumed to be innocent, and the government would have the burden

12 of proving you guilty beyond a reasonable doubt, coming forward

13 with evidence to prove you guilty beyond a reasonable doubt.  Do

14 you understand that?

15     THE DEFENDANT:  Yes, Your Honor.

16     THE COURT:  The corollary to that is you don't prove

17 your innocence.  They have to prove your guilt.  You understand

18 that?

19     THE DEFENDANT:  Yes, Your Honor.

20     THE COURT:  All right.  And in the course of the trial,

21 the witnesses for the government would have to come to court and

22 testify in your presence, and your attorney would have the right

23 to confront and cross-examine the witnesses for the government,

24 he could object to evidence offered by the government, and,

25 likewise, he could offer evidence on your behalf if you chose to

1    have him do that.  Do you understand those things?

2                   THE DEFENDANT:  Yes, Your Honor.

3                   THE COURT:  And also, Mr. Comeaux, if there were

4    favorable witnesses that you and your attorney wanted at the

5    trial and those people said they couldn't come or wouldn't come,

6    you could use the Court's subpoena power to make them appear.  Do

7    you understand that?

8                   THE DEFENDANT:  Yes, Your Honor.

9                   THE COURT:  And also at the trial, while you would have

10   a right to testify if you chose to do that, you would also have a

11   right not to be compelled to incriminate yourself, and that

12   equates to the right not to testify -- not to have to testify,

13   and that's a constitutional right guaranteed to you as well.  Do

14   you understand that?

15                  THE DEFENDANT:  Yes, Your Honor.

16                  THE COURT:  And the other rule is if you had a trial

17   and you chose not to testify, the jury could not, on that

18   account, convict you on the violation being tried, and that would

19   be something that's waived or given up by the guilty plea.  Do

20   you understand that?

21                  THE DEFENDANT:  Yes, Your Honor.

22                  THE COURT:  All right, sir.  If you continue in the

23   guilty plea and if I accept your plea, do you understand you will

24   have waived your right to a trial and all the other rights I've

25   just discussed?

```
 1                    THE DEFENDANT:  Yes, Your Honor.

 2                    THE COURT:  There would be, in other words, no further

 3        trial.  I would enter judgments of guilty today and you would be

 4        sentenced at a later date simply on the basis of the guilty plea

 5        alone.  Do you understand that?

 6                    THE DEFENDANT:  Yes, Your Honor.

 7                    THE COURT:  Likewise, you will be waiving your right

 8        not to incriminate yourself since I will, as you saw a little

 9        while ago, ask you a couple of questions about what you did to

10        assure myself and to be satisfied that yours is a valid plea.

11        You acknowledge your full guilt in open court in other words.  Do

12        you understand that?

13                    THE DEFENDANT:  Yes, Your Honor.

14                    THE COURT:  Likewise, this is a Bill of Information,

15        and it's been explained to you that you would have a right, in

16        cases like this, to have your case presented to a grand jury

17        prior to having the charges actually brought to court.  You

18        understand that?

19                    THE DEFENDANT:  Yes, Your Honor.

20                    THE COURT:  And that you would be waiving that by

21        pleading guilty to this Bill of Information.  Do you understand

22        that?

23                    THE DEFENDANT:  Yes, Your Honor.

24                    THE COURT:  Had that already been explained to you?

25                    THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  Are you willing to waive and give up your

2     right to a trial and all the other rights I've just discussed?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Has anybody threatened you, leaned on you,

5     forced you to plead guilty, or told you if you don't plead

6     guilty, some further charges would be brought against you or

7     other adverse action taken against you?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  All right.  These offenses are felony

10    offenses.  You understand that?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  If your plea is accepted, you will be

13    adjudged guilty of those offenses, and that adjudication could

14    deprive you of valuable civil rights, and those include the right

15    to vote, the right to hold public office, the right to serve on a

16    jury, and the right to possess any kind of firearm.  Do you

17    understand those things as well?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Now, are you willing, then, to plead guilty

20    because you are in fact guilty of all three counts?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And this is completely free and voluntary

23    on your part; is that right?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Okay.  Did you receive and review this

1    Bill of Information yourself?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  You went over it and you went over it with

4    your attorney?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Even though you may have discussed those

7    matters with your attorney, I'm required to go through with you

8    the Bill of Information, these counts and the elements of the

9    offense, as you heard me do with the prior case.

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  The first count in this Bill of Information

12   is a violation of 18 U.S.C. § 241 generally titled Civil Rights

13   Conspiracy.  It alleges that on or about April 29th, 2011, at

14   the Iberia Parish Jail down here in New Iberia, you willfully

15   combined, conspired, and agreed with other law enforcement

16   officers to injure, oppress, threaten, and intimidate inmates,

17   including one with the initials A.D., in the free exercise and

18   enjoyment of the right, secured and protected by the Constitution

19   and laws of the United States, not to be deprived of liberty

20   without due process of law, and that right includes the right to

21   be free from the use of excessive force amounting to punishment

22   by a law enforcement officer.

23             And specifically it alleges that you agreed with other

24   officers to unjustifiably assault and injure restrained -- well,

25   restrained and/or compliant inmates in the chapel at the jail

```
 1   where there were no video surveillance cameras, and it was part
 2   of the agreement that officers who witnessed these unlawful
 3   assaults would not intervene to stop them.
 4            Do you understand that to be the actual charge in
 5   Count 1?
 6            THE DEFENDANT:  Yes, sir.
 7            THE COURT:  Now, the elements of that particular
 8   offense, 18 U.S.C. § 241, are:
 9            First, that you, the defendant, entered into an
10   agreement with at least one other person;
11            Second, that the purpose of the agreement was to
12   injure, oppress, or threaten inmates in the free exercise and
13   enjoyment of a federally protected right, in this case, the right
14   to due process of law, which includes the right to be free from
15   excessive use of force amounting to punishment by a law
16   enforcement officer; and
17            Third, that you, as the defendant, knew the unlawful
18   purpose of the conspiracy and joined it willfully, that is, with
19   the intent to further its unlawful purpose.
20            Now, Count 2 of the Bill of Information is generally
21   titled Deprivation of Rights Under Color of Law, and it's a
22   violation alleged to be of 18 U.S.C. § 242.
23            It alleges that on or about April 29th, 2011, the
24   same day, while acting under color of law and while aided and
25   abetted by others, you willfully actually deprived this inmate,
```

1  A.D., who was a pretrial detainee, of the right, protected and

2  secured by the Constitution and laws of the United States, not to

3  be deprived of liberty without due process of law, and that

4  included the right to be free from the use of excessive force

5  amounting to punishment by a law enforcement officer.

6          Specifically it alleges that you actually assaulted

7  inmate A.D. in the chapel of the jail, a place not covered by the

8  jail's video surveillance system, and that offense involved the

9  use of a dangerous weapon, in this case a baton, and it resulted

10  in actual bodily injury to A.D.

11          Now, under Count 2, that 18 U.S.C. § 242 violation, the

12  elements are:

13          First, that you, the defendant, acted under color of

14  law;

15          Second, that you, the defendant, deprived this person,

16  A.D., a person in the United States, of a right to be protected

17  or secured by the Constitution or laws of the United States, and

18  here, specifically the right to due process of law, which

19  includes the right to be free from the use of excessive force

20  amounting to punishment by a sheriff's deputy;

21          Third, that you, the defendant, acted willfully; and

22          Fourth, that the offense resulted in actual bodily

23  injury to the victim or involved the use of a dangerous weapon.

24          Now, Count 3 of the Bill of Information is conspiracy

25  to obstruct.  18 U.S.C. § 371 is the statute.  And this one

1    alleges that from on or about April 29th, 2011, until on or

2    about February, 2016, this year, in the Western District of

3    Louisiana, you willfully combined, conspired, and agreed with

4    other Iberia Parish Sheriff's Office employees to knowingly

5    engage in misleading conduct toward others in order to hinder,

6    delay, and prevent the communication to a federal law enforcement

7    officer and a federal judge of information relating to the

8    commission and possible commission of a federal offense in

9    violation of 18 U.S.C. § 1512(b)(3).

10           It is alleged that it was the plan and purpose of this

11   conspiracy that you and your co-conspirators would cover up the

12   unlawful assaults of inmates in the chapel referred to in

13   Count 1 by providing false and misleading statements in civil

14   proceedings regarding those assaults.

15           And there are certain overt acts alleged, meaning

16   specific things done in furtherance of the conspiracy, and those

17   are alleged to be:

18           First, that you met with senior Iberia Parish Sheriff's

19   Office employees who told you to come up with a false story to

20   cover up the unlawful beating of that person, A.D.;

21           Second, that you met with other officers involved in

22   the beating of A.D., told them what the senior IPSO employee

23   said, and together came up with a false story to provide in

24   depositions; and

25           Third, at the direction of the senior Iberia Parish

1    Sheriff's Office employee, you and other officers provided false

2    testimony during their depositions.

3                And the elements of that particular count, the things

4    the government would have to prove, all of these are beyond a

5    reasonable doubt:

6                First, that you, as the defendant, and one or more

7    persons in some way agreed to try to accomplish or share in an

8    unlawful plan, that is, to knowingly engage in misleading conduct

9    toward another person with the effect to hinder, delay, or

10   prevent the communication to a federal law enforcement officer

11   and a federal judge of information relating to the commission and

12   possible commission of a federal offense in violation of

13   18 U.S.C. § 1512(b)(3);

14               Second, that you knew the unlawful purpose of the plan

15   and willfully joined in it;

16               Third, that during the conspiracy, one of the

17   conspirators knowingly engaged in at least one overt act as

18   described in the Bill of Information; and

19               Fourth, that the overt act was committed at or about

20   the time alleged and with the purpose of carrying out or

21   accomplishing some object of the conspiracy.

22               Now, that's a lot.  Do you understand all of those

23   charges against you and the elements?

24               THE DEFENDANT:  Yes, Your Honor.

25               THE COURT:  Do you need me to go over any of that

1    again?  I'll be happy to.

2              THE DEFENDANT:  No, sir, Your Honor.

3              THE COURT:  All right.  I was handed earlier this

4    Rule 11 package that was described by Mr. Van Hook, and it also

5    contained a number of documents in it that are purported to be

6    signed by you.  One of those is the waiver -- excuse me, an

7    agreement and waiver of the statute of limitations that has your

8    signature.  Another one is the waiver of indictment that we

9    talked about.  Another one is the document called Elements of the

10   Offense from which I just read.  Another is this Affidavit of

11   Understanding of Maximum Penalty and Constitutional Rights.  All

12   these that I've mentioned have your signature on them.  The plea

13   agreement, which, of course, has your signature on it, and a

14   stipulation in support of guilty plea that also is signed by you.

15             Now, that's in fact your signature on all of these

16   documents?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  All right.  Well, I'm going to get you,

19   then, to refer with me to this Affidavit of Understanding of

20   Maximum Penalty and Constitutional Rights because the penalties

21   here are what I need to tell you about.

22             In Count 1, the penalties are potentially a term of

23   imprisonment of not more than ten years or a fine of not more

24   than $250,000, or both; a term of supervised release of not more

25   than three years in length in addition to any term of

```
 1   imprisonment; and a special assessment of $100 due at the time of
 2   the guilty plea.
 3           On Count 2, the potential penalty is a term of
 4   imprisonment of not more than ten years or a fine of not more
 5   than $250,000, or both; a term of supervised release of not more
 6   than three years in length in addition to any term of
 7   imprisonment; and a special assessment of $100 at the time of the
 8   guilty plea.
 9           And as to Count 3, the potential sentence is a term of
10   imprisonment of not more than five years or a fine of not more
11   than $250,000, or both; a term of supervised release of not more
12   than three years in length in addition to any term of
13   imprisonment; and also a special assessment of $100 at the time
14   of the guilty plea.
15           So the special assessment, of course, is $300 total.
16   You understand that?
17           THE DEFENDANT:  Yes, Your Honor.
18           THE COURT:  All right.  Are those sentences that you've
19   been told about and understand them to be correct?
20           THE DEFENDANT:  Yes, Your Honor.
21           THE COURT:  All right.  And you and Mr. Billeaud have
22   gone over the matter of potential sentencing guidelines and how
23   they might apply in this case?
24           MR. BILLEAUD:  I have, Your Honor.
25           THE COURT:  The guidelines, I need to tell you also,
```

1    are advisory only to the Court, and the Court has the power to

2    make departures and variances from the guidelines, either upward

3    or downward.  Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  All right.  Either party, of course, has

6    the right to appeal those determinations.

7              I've told you about the supervised release that you

8    could get.  A violation of the terms and conditions of supervised

9    release, of course, at any time during the supervised release

10   could result in your being incarcerated for a time over and above

11   any period of imprisonment ordered by the Court, and while

12   supervised release usually is run concurrently, that is to say

13   it's all run at the same time, you could potentially get a

14   sentence of up to two years for a violation of the terms of

15   conditions of supervised release.  Do you understand that?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  And that's regardless of the amount of

18   supervised release you had successfully completed, and as you

19   heard me tell the last gentleman, that means you don't get good

20   time while you're on supervised release.  You understand that?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Okay.  Of course, plea agreements are

23   permissible.  We have your signed written plea agreement and

24   we've talked about the penalty there.

25             It's also mentioned in there you have the assessment

1   and it's $300 in this case, or $100 per count, and that has to be

2   paid to the Clerk of Court.

3           Likewise, Mr. Van Hook, you're satisfied with that?

4           MR. VAN HOOK:  Yes, Your Honor, but I would like to

5   call the Court's attention -- I may have misheard, but I believe

6   that you said that one of the terms of supervised release was two

7   years.  I believe it's three years for all three counts.

8           THE COURT:  It is three, but I think there's a two-year

9   limitation should he violate terms or conditions of the

10  supervised release.

11          MR. VAN HOOK:  Yes, sir.  I misheard, Your Honor.

12          THE COURT:  That's great.  I just want to get that

13  right in case there's any issue with it.

14          Likewise, I used the word "restitution."  It is

15  possible in any case for restitution to be there.  This may not

16  be one of those cases or it may be, I don't know that, but the

17  Court has the authority to order a defendant to make restitution,

18  and both the amount and the method of payment are at the

19  discretion of the Court.  Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  All right.  And, likewise, there are ways

22  that one cooperates with the government, and the matter of

23  cooperation with the government is an issue that's examined at

24  the time of sentencing.  Do you understand that?

25          THE DEFENDANT:  Yes, Your Honor.

```
 1                    THE COURT:  Now, has anybody made any promises to you
 2        other than those contained in the plea agreement in the case?
 3                    THE DEFENDANT:  No, Your Honor.
 4                    THE COURT:  Counsel, would you all indicate whether
 5        there are any side agreements.
 6                    Mr. Billeaud?
 7                    MR. BILLEAUD:  There are no side agreements,
 8        Your Honor.
 9                    THE COURT:  Mr. Van Hook?
10                    MR. VAN HOOK:  There are no side agreements,
11        Your Honor.
12                    THE COURT:  All right.  So after today, Mr. Comeaux,
13        what will happen likely is that your attorney and/or the
14        government's attorney can make recommendations of sentence to the
15        Court.  And to tell you a few things about that, even if they
16        agree on a particular recommendation or whether they don't, none
17        of that is binding on the Court, and you could receive a sentence
18        more severe than that recommended by the attorneys in the case.
19        Do you understand that?
20                    THE DEFENDANT:  Yes, Your Honor.
21                    THE COURT:  And the failure of the Court to adhere to
22        any sentencing recommendation by either or both of the lawyers in
23        the case is not a basis for setting aside the guilty plea.  Do
24        you understand that?
25                    THE DEFENDANT:  Yes, Your Honor.
```

1          THE COURT:  To each count, all three.  You understand?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Okay.  Now, there is one thing that I did

4    not mention with you earlier and that is that if you successfully

5    plead guilty, according to this plea agreement, this is going to

6    be your sole exposure under this particular investigation from

7    the government.  Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  All right.  Mr. Van Hook, witness, please.

10          MR. BILLEAUD:  Your Honor, if I can, and so if the

11    Court has any questions relative to this issue, just to preserve

12    the record, because I don't know, Your Honor, in light of our

13    discussions, who is going to end up with the case down the road.

14          So that Your Honor understands, I was called and

15    assigned to the case Thursday -- or Wednesday afternoon and I met

16    with the attorneys on Thursday and worked over the weekend to try

17    and facilitate this process because of some grand jury deadlines.

18    So I apologize.  I probably should have called and clarified this

19    issue before.  I don't think it's imperative to what we are doing

20    today, but in the event another judge is saddled with the case

21    and it's addressed, I want to make sure that I've put this on the

22    record.

23          One of the issues involved in this case was a beating

24    that occurred on an inmate with the initials A.D., and my client

25    admitted in debriefing prior to this, and clarified in this

 1  factual basis, that he did participate in the beating with his

 2  fists.  Other officers used batons, my client did not, but his

 3  actions were in concert with others, and, as a result, Count 2

 4  states that the offense involved the use of a dangerous weapon, a

 5  baton, and resulted in bodily injury to A.D.  This Count 2

 6  requires the offense results in bodily injury or involved the use

 7  of a dangerous weapon.  The government's position is it

 8  constituted both.  I know it constituted both, only that my

 9  client participated in the beating, but didn't use a baton.

10       So if that were an issue at a sentencing point down the

11  road and the trier of fact said, well, you shouldn't have done

12  this, I'm clarifying that now.  I think it still meets the

13  elements of the offense, but I wanted to bring that to

14  Your Honor's attention.

15       THE COURT:  I will let you explore that with the

16  witness if you wish.

17       MR. BILLEAUD:  I think it's done well enough in the

18  factual basis, but I wanted to bring it to your attention, and if

19  I need any clarification, I will.  Thank you.

20       THE COURT:  Okay.  Well, putting it on the record here,

21  there's nothing wrong with that at all.

22       MR. VAN HOOK:  And, Your Honor, just in response, it's

23  the government's position that as a matter of sentencing, it

24  doesn't matter who used the baton.  It's obviously up to the

25  Court to decide whether or not additional points may be added to

```
 1    the sentencing calculation.  It's the government's position that
 2    they should be regardless of who used the baton, and that's an
 3    agreement -- that's a disagreement Mr. Billeaud and I have agreed
 4    to have, but we'll advance those arguments at a sentencing
 5    hearing where I think it's most appropriate.
 6              THE COURT:  But for purposes of this hearing, though,
 7    it's my appreciation that everyone is in agreement that it
 8    doesn't matter insofar as the guilty plea is concerned.  What
 9    you're saying is -- you're kind of talking about role in the
10    offense as some kind of a factor that the Court might look at at
11    the time of sentencing.
12              MR. BILLEAUD:  Absolutely.
13              THE COURT:  Thank you.
14              MR. VAN HOOK:  Your Honor, the United States would call
15    Special Agent Zulli.
16              THE COURT:  All right.  If you would return and raise
17    your right hand again, please.
18              THE COURTROOM DEPUTY:  Do you solemnly swear that the
19    testimony you are about to give in this case will be the truth,
20    the whole truth, and nothing but the truth, so help you God?
21              THE WITNESS:  I do.
22    Whereupon,
23                   SPECIAL AGENT SANDRA ZULLI
24    was called as a witness; after having been first duly sworn, was
25    examined and testified as follows:
```

```
 1                        DIRECT EXAMINATION
 2   BY MR. VAN HOOK:
 3   Q     Would you please state your name and occupation.
 4   A     Sandra M. Zulli, Z-U-L-L-I.  I'm a special agent with the
 5   FBI.
 6   Q     And how long have you been a special agent?
 7   A     Twenty years.
 8   Q     And your work as a special agent, are you the lead
 9   investigator involving the case of Mr. Comeaux?
10   A     Yes.
11   Q     And did your investigation focus on a series of events that
12   occurred on or about April 29th of 2011?
13   A     Yes.
14   Q     And did those events involve some activity and unrest at the
15   Iberia Parish jail on that day?
16   A     Yes.
17   Q     And was Mr. Comeaux called to the Iberia Parish jail that
18   day to respond to that unrest?
19   A     Yes.
20   Q     And what was your understanding of the role Mr. Comeaux and
21   others was to play that day?  Was he there to help?
22   A     He was there -- Jason Comeaux, the defendant, along with
23   many other officers responded for a shakedown at the jail.
24   Q     All right.  And was there one particular inmate at the jail
25   Mr. Comeaux encountered on that day?
```

```
 1   A     Yes.

 2   Q     That we're focusing on here?

 3   A     Yes, initials A.D.

 4   Q     Okay.  And did Mr. Comeaux use excessive force against A.D.

 5   at the jail?

 6   A     Yes.

 7   Q     Is it your understanding that others were present with

 8   Mr. Comeaux at the time that happened?

 9   A     Yes.

10   Q     And one of those people was a high ranking official with the

11   Iberia Parish Sheriff's Department?

12   A     Yes.

13   Q     And what is your understanding of what happened to A.D.?

14   Where was he taken and what happened to him?

15   A     During the course of the shakedown, the defendant,

16   Mr. Comeaux, he entered the pod, and he was with the high ranking

17   officials when they entered the pod.  That's where they learned

18   that A.D. had been causing trouble.  The high ranking official

19   became enraged, and the high ranking official told Mr. Comeaux to

20   take care of A.D. and noted that Comeaux knew what the high

21   ranking IPSO official wanted done to A.D.

22   Q     Essentially to rough him up a little?

23   A     To punish him, yes.

24   Q     Okay.  And where was A.D. taken?

25   A     He was escorted to the chapel.  They escorted him to the
```

1   chapel because they knew that that was an area that did not have

2   surveillance cameras.

3   Q    What happened to A.D. once he got to the chapel?

4          And I can refer your attention to page 3 of the

5   stipulated factual basis, kind of in the middle of the page.

6   A    Once inside the chapel, the defendant and other narcotics

7   agents struck A.D. while he was surrounded by officers,

8   compliant, and not presenting a threat to anyone.  The defendant

9   used his fists and others used their fists as well as batons on

10  A.D. while A.D. was lying on the chapel floor.

11  Q    Was the high ranking Iberia Parish Sheriff's Office official

12  who ordered the assault present during the assault according to

13  the facts of your investigation?

14  A    Yes.

15  Q    And were other supervisors present as well?

16  A    Yes.

17  Q    After the assault of A.D., what happened to him?

18          If you'll focus on the bottom of page 3 of the

19  stipulated factual basis.

20  A    Yes.  A.D. was dragged out of the chapel.  He couldn't walk

21  on his own.  On the way to the lockdown unit, Comeaux heard A.D.

22  tell the high ranking official who was following the escort that

23  his ribs hurt from being beaten, and the high ranking official

24  responded that nobody had beaten A.D. and that A.D. had been in a

25  fight.

1   Q    Are you aware, based on your investigation, that as a result

2   of these activities, some civil lawsuits were brought against

3   Mr. Comeaux and others with the Iberia Parish Sheriff's Office?

4   A    Yes.

5   Q    And did an official -- did Mr. Comeaux share his story with

6   one of the officials -- a senior official with the Iberia Parish

7   Sheriff's Office about what had happened?

8   A    Yes.

9   Q    And what happened after he shared that story to your

10  understanding?

11  A    Well, after they received notice and he met with the senior

12  official and he told the senior official that he had beaten A.D.

13  in the chapel, the senior official told Comeaux to fix the story.

14  Q    And is it your understanding that after that meeting where

15  he was told to fix the story, that Mr. Comeaux and others got

16  together and decided to lie about what happened?

17  A    Yes.  They -- his impression -- Comeaux's impression was

18  that they wanted him to give false testimony on his role in the

19  beating of A.D.

20  Q    Okay.  And did Mr. Comeaux coordinate that false testimony

21  with others?

22  A    Yes.  They conspired to the same story, false story.

23  Q    And is it your understanding that Mr. Comeaux met with

24  officials with the Iberia Parish Sheriff's Office as recently as

25  February of 2016 in order to discuss this cover-up and the events

1    surrounding the incident at the jail?

2    A    Yes.

3    Q    And is it your understanding, based on your investigation

4    and talking to Mr. Comeaux and others, that they were going to

5    misrepresent their roles in the offense in part to keep the facts

6    from coming to light to federal law enforcement about what

7    happened in the jail that day?

8    A    Yes.

9         MR. VAN HOOK:  May I have a moment, Your Honor?

10        THE COURT:  Yes.

11                      (Conferring)

12        MR. VAN HOOK:  I'll tender the witness, Your Honor.

13        THE COURT:  All right.  I have no questions.

14        Mr. Billeaud?

15        MR. BILLEAUD:  I don't have any questions, Your Honor.

16        THE COURT:  All right.  You may step down.

17        I may have forgotten to go over one sentencing issue,

18   at least this is what I do in these cases.  Would y'all come on

19   back up.

20        You told me, Mr. Comeaux, that you had gone over the

21   matter of the sentencing guidelines.  I don't think I elucidated

22   the Court's role with that.

23        After today, whoever actually sentences on the case

24   will sentence you based upon a calculation of the guidelines.

25   There will be a presentence investigation report prepared after

1    today.  The case will be referred to Probation and Pretrial

2    Services for that.

3           That report will contain the guideline range.  It will

4    be furnished to the lawyers.  You'll have a chance to review it

5    with them.  But it will also be considered by the Court then, the

6    correct guideline range, together with the factors under

7    18 U.S.C. § 3553(a).

8           And just to touch base on those with you, even though

9    you may have heard them a little while ago, the factors that the

10   Court considers under 3553(a) are:

11          The nature and circumstances of the offense and the

12   history and characteristics of the defendant, in other words,

13   information about you as well;

14          The need for the sentence imposed to reflect the

15   seriousness of the offense, promote respect for the law, and

16   provide just punishment for the offense;

17          Third, or another factor, is affording adequate

18   deterrence to criminal conduct; the protection of the public from

19   further crimes of the particular defendant; and to provide a

20   defendant with needed educational or vocational training or

21   medical care or other correctional treatment in the most

22   effective manner.

23          We look, of course, at the various kinds of sentences

24   that are available to the Court and the guidelines themselves.

25          We look at the need to avoid unwarranted sentencing

1   disparities among defendants with similar records who have been

2   found guilty of similar conduct.

3         And then that last one, the need, if it's appropriate,

4   to provide restitution to any victims of a particular offense.

5         So that it's clear, your sentence is entirely up to me

6   and not up to the lawyers in the case, but, more importantly, you

7   have a right to appeal any sentence that's imposed upon you, but

8   the failure of the Court to adhere to a particular sentencing

9   recommendation is not a basis for setting aside the guilty plea

10  in the case.  You understand that?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  All right.  Now, then, you've heard the

13  witness's testimony.  I've gone over with you the charges in the

14  Bill of Information and also the elements of the three offenses

15  to which you're offering to plead guilty.  So I need to know

16  whether you need me to repeat any of that.

17        THE DEFENDANT:  No, Your Honor.

18        THE COURT:  And do you understand, then, each of the

19  elements of these three offenses and agree that you committed

20  each and every one?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  All right.  Having heard my explanation to

23  you of those elements and also the maximum penalty as to each

24  offense and all the rights given up and all the consequences, I

25  need to ask you if you wish to continue in your guilty pleas on

1    these three counts.

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Then I need to ask you formally:  As to

4    Count 1 of the Bill of Information, how do you plead?

5              THE DEFENDANT:  Guilty.

6              THE COURT:  And as to Count 2, how do you plead?

7              THE DEFENDANT:  Guilty.

8              THE COURT:  And Count 3, how do you plead?

9              THE DEFENDANT:  Guilty.

10             THE COURT:  All right.  I'm satisfied that Mr. Comeaux

11   fully understands the nature of the charges against him, the

12   consequences of a plea of guilty, and I find that the plea

13   entered is voluntarily and knowledgeably entered as to each

14   count.  His plea of guilty to each count is accepted and the

15   written plea agreement is accepted in accordance with

16   Rule 11(c)(4).  And, likewise, the sentencing date will be set at

17   a later time after completion of the presentence investigation

18   report.

19             And you'll need to continue to work with your attorney.

20   Part of his job is to assist you and being certain that the

21   information about you furnished to probation services is accurate

22   and correct and helpful to you.

23             If you have them, you will be required to furnish your

24   last five years income tax returns to probation services within

25   45 days from today.  If you don't have them, there are necessary

1    forms for you to sign to request them from the IRS.

2           And, counsel, once again for the record, you'll each

3    have an opportunity to argue for whatever sentence you deem

4    appropriate by submitting a brief to the Court no later than 15

5    days before the sentencing date, and those briefs have to be

6    filed under seal with confidential copies to the probation office

7    and to the sentencing judge's chambers.

8           The Court will look at all of the 3553(a) factors.

9    Please tailor your arguments, especially on 3553(a), how you

10   think that it applies here.

11          Reply briefs are allowable within five days of receipt

12   of the original brief.

13          And, of course, the filing of those briefs does not

14   relieve you of the obligation to provide the probation officer

15   with objections to the presentence report within 14 days under

16   the federal and local rules.

17          All right, then.  Now, with regard to detention,

18   Mr. Van Hook?

19          MR. VAN HOOK:  Your Honor, the government has no

20   objection to Mr. Comeaux being released on his own recognizance.

21   The government would ask that the condition that he not possess

22   firearms be imposed.  It's my understanding that Mr. Comeaux has

23   surrendered all of his firearms except for one, and we'd ask that

24   he no longer possess that firearm within 24 hours of this

25   hearing.

1          THE COURT:  All right.  Is that agreeable,

2    Mr. Billeaud?

3          MR. BILLEAUD:  Absolutely, Your Honor.

4          THE COURT:  Is that agreeable to you, Mr. Comeaux?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  You understand those terms clearly?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  All right.  You have to comply with those

9    or you'll be in bad trouble.  Okay?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  So he'll be released on his own

12    recognizance.

13          Is there anything else we need to do in this

14    proceeding?

15          MR. VAN HOOK:  May I have a moment, Your Honor?

16          THE COURT:  Yes, sir.

17                    (Conferring)

18          MR. BILLEAUD:  Your Honor, there's one issue.  In light

19    of some of the circumstances involved in this investigation, my

20    client has already transferred over hunting weapons and other

21    service related weapons, which he has given full ownership to his

22    father in hope of passing on to his son down the road.

23          One issue is they're going to get a safe for his dad to

24    put in the home.  There may be a circumstance where my client

25    needs to reside with his father for personal security reasons

1    because of some of the heat that could arise here.  We want to

2    make sure that if all weapons that he has transferred out of his

3    possession are maintained in a locked safe to which my client has

4    no knowledge of the lock or code to get in, if that would be

5    sufficient for Your Honor.  It's not anticipated to be a long

6    period of time, but it may be a little while.

7            THE COURT:  All right.  Is that satisfactory to the

8    government?

9            MR. VAN HOOK:  Yes, Your Honor.

10           THE COURT:  Here's what I'm going to require.  It's no

11   problem to do it that way, but it's going to be required that

12   Mr. Comeaux communicate all of the chronology of what actually

13   happened with that to the probation officer.  In other words,

14   keep the probation office advised of how this is playing out so

15   that the Court can be kept informed, if necessary, as can the

16   government, if necessary, and then I'll expect you to communicate

17   with Mr. Van Hook, you know, about it as things unfold.

18           MR. BILLEAUD:  Yes, Your Honor.

19           THE COURT:  All right.  Is there anything else we need

20   to do in this case?

21           MR. VAN HOOK:  Not from the United States, Your Honor.

22           MR. BILLEAUD:  Nothing, Your Honor.

23           THE COURT:  Thank you.  We are going to be adjourned.

24   Thank y'all.

25                          _  _  _

1               Certificate

2   I hereby certify this 28th day of April, 2016, that the foregoing

3   is, to the best of my ability and understanding, a true and

4   correct transcript from the record of proceedings in the

5   above-entitled matter.

6

7                               */s/ LaRae E. Bourque*

8                               Federal Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25